PASHMAN STEIN WALDER HAYDEN
A Professional Corporation
CJ Griffin
Court Plaza South
21 Main Street, Suite 200
Hackensack, New Jersey 07601
(201) 488-8200

AMERICAN CIVIL LIBERTIES UNION
OF NEW JERSEY FOUNDATION
Alexander Shalom
Jeanne LoCicero
P.O. Box 32159
Newark, New Jersey 07102
(973) 854-1714

Attorneys for Plaintiffs,
  Cody Conroy and H.S., a pseudonym

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

------------------------------------------------------------------x
| | |
|---|---|
| CODY CONROY and H.S., a pseudonym, : | |
| : | |
| Plaintiffs, : | Civil Action No.: 19-9452 (MAS) |
| : | (TJB) |
| - against - : | |
| : | |
| LACEY TOWNSHIP SCHOOL DISTRICT; : | **FIRST AMENDED COMPLAINT** |
| GREGORY BRANDIS, Principal of Lacey : | |
| Township High School; CRAIG WIGLEY, School : | |
| District Superintendent; MARK ANGELO, : | |
| Assistant Principal of Lacey Township High School; : | |
| CRAIG CICARDO, Anti-Bullying Specialist of the : | |
| Lacey Township High School; JOHN DOES 1-10, : | |
| all in their official and individual capacities, : | |
| : | |
| Defendants. : | |
------------------------------------------------------------------x

Plaintiffs CODY CONROY ("Conroy") and H.S., a pseudonym ("H.S.") (collectively

referred to as "Plaintiffs"), by and through their attorneys, Pashman Stein Walder Hayden, P.C.

1

and the American Civil Liberties Union of New Jersey Foundation,[1] as and for their Complaint against Defendants LACEY TOWNSHIP SCHOOL DISTRICT ("the School District") with its principal place of business at 200 Western Blvd., Lanoka Harbor, NJ 08734; GREGORY BRANDIS, Principal of Lacey Township High School, whose business address is 73 Haines St., Lanoka Harbor, NJ 08734; Craig Wigley, former School District Superintendent, whose address is 45 Estaugh Ave., Haddonfield, New Jersey 08033; Mark Angelo, Assistant Principal of the Lacey Township High School, whose business address is 73 Haines St., Lanoka Harbor, NJ 08734; Craig Cicardo, Anti-Bullying Specialist, whose business address is 73 Haines St., Lanoka Harbor, NJ 08734 and JOHN DOES 1-10, allege as follows:

## INTRODUCTION

1. This is a civil rights action to vindicate Conroy and H.S.'s constitutional rights under the First Amendment of the United States Constitution, and Article 1, ¶6, of the New Jersey Constitution. Students have a constitutional right to engage in expressive activities off school grounds during their personal time without being subject to discipline by public school administrators. Even if schools have authority to discipline a student's speech, they may only do so where that speech is likely to cause a substantial and material disruption to the school environment. This action seeks the relief described below, including a declaration that the School District and its administrators exceeded their authority and violated the law when they disciplined Conroy and H.S. for posting photographs of guns on social media.

---

[1] Pursuant to Local Rule 10.1, Plaintiffs may be reached through the addresses of their attorneys as listed above. The street addresses of Plaintiffs, who each live in Lanoka Harbor, New Jersey, are omitted to maintain their privacy. Plaintiffs H.S. was a minor at the time the allegations in the Complaint occurred; Conroy was an eighteen-year-old high school student.

2

2. The Defendants have violated Conroy and H.S.'s constitutional right to free speech by imposing discipline for non-threatening, purely off-campus speech, which both young men expressed to friends on Snapchat during their personal time.

3. Conroy and H.S. posted on Snapchat pictures of firearms that are lawfully owned and were lawfully used during a weekend target practice session at a family shooting range on private property, far away from school grounds.

4. Under no circumstances could the pictures reasonably be construed as threatening, violent, or otherwise posing any risk to the school community. The picture that H.S. posted contained no captions whatsoever and merely depicted legal firearms lying upon a table. The pictures that Conroy posted referred to a "zombie apocalypse."

5. The School District claimed that the pictures would cause a material and substantial disruption at school and imposed in-school suspensions upon Conroy and H.S.

6. Conroy and H.S. posted the pictures using a feature on Snapchat, whereby all postings are automatically deleted after 24 hours. By the time that the School District became aware of the photographs, they had already been deleted and were no longer viewable by anyone.

7. As a result, no substantial or material disruption of the operation of the school had actually occurred and there was no specific and significant fear of future disruption.

8. The Defendants violated Conroy's and H.S.'s free speech rights by punishing them for purely off-campus speech with no evidence that the speech caused, or would cause, a material and substantial disruption at school.

9. The Defendants' imposition of discipline was also *ultra vires* because it was not authorized by N.J.S.A. 18A:37-2 or N.J.A.C. 6A:16-7.5, which only permit a school to impose discipline under limited circumstances that are not present in this case.

## THE PARTIES

10. Plaintiff Cody Conroy resides in Lanoka Harbor, New Jersey. At the time of the incidents giving rise to his claims, Conroy was a senior high school student at Lacey Township High School.

11. Plaintiff H.S. resides in Lanoka Harbor, New Jersey. At the time of the incidents giving rise to his claims, H.S. was a senior high school student at Lacey Township High School. He was seventeen at the time of the events giving rise to this Complaint.

12. Defendant Lacey Township School District is a political subdivision of the State of New Jersey organized and existing under Title 18 of the New Jersey Statutes which is responsible for the operation and policies of the public schools within the Township of Lacey. The District maintains its principal office at 200 Western Blvd., Lanoka Harbor, New Jersey 08734.

13. Defendant Gregory Brandis is, and at all relevant times hereafter mentioned was, the Principal of Lacey Township High School. Defendant Brandis has at all times hereinafter mentioned acted under color of state law and pursuant to official policy, practice, or procedure of the School District. In his capacity as Principal, Defendant Brandis is obliged to act in conformity with the United States Constitution and applicable federal and state laws. He is sued in both his individual and official capacities.

14. Defendant Craig Wigley at all relevant times hereafter mentioned was the Superintendent of the Lacey Township School District. Defendant Wigley has at all times hereinafter mentioned acted under color of state law and pursuant to official policy, practice, or procedure of the School District. In his capacity as Superintendent, Defendant Wigley was responsible for ensuring that the School District and its officials act in conformity with the United States Constitution and applicable federal and state laws. He is sued in both his individual and official capacities.

15. Defendant Mark Angelo at all relevant times hereafter mentioned was the Assistant Principal of Lacey Township High School. Defendant Angelo has at all times hereinafter mentioned acted under color of state law and pursuant to official policy, practice, or procedure of the School District. In his capacity as Assistant Principal, Defendant Angelo is obliged to act in conformity with the United States Constitution and applicable federal and state laws. He is sued in both his individual and official capacities.

16. Defendant Craig Cicardo, at all relevant times hereafter mentioned was the Anti-Bullying Specialist of Lacey Township High School. Defendant Cicardo has at all times hereinafter mentioned acted under color of state law and pursuant to official policy, practice, or procedure of the School District. In his capacity as Anti-Bullying Specialist, Defendant Cicardo is obliged to act in conformity with the United States Constitution and applicable federal and state laws. He is sued in both his individual and official capacities.

17. Defendant John Does 1-10 are other unknown school employees, administrators or officials whose identities are not yet known but whose conduct caused or contributed to the violations described herein and who at all times hereinafter mentioned acted under color of state law and pursuant to official policy, practice or procedure of the School District.

## JURISDICTION AND VENUE

18. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343, as this action arises under the First Amendment of the Constitution of the United States of America and 42 U.S.C. §§ 1983 and 1985. Declaratory and injunctive relief is sought pursuant to 28 U.S.C. §§ 2201 and 2202.

19. This Court has supplemental jurisdiction over Plaintiffs' claims under Article 1, ¶6 of the New Jersey Constitution and other state law claims pursuant to 28 U.S.C. § 1367.

20. Venue is proper in this Court under 28 U.S.C. § 1391 because Defendant Lacey Township School District is deemed to reside in this District and the acts and actions which give rise to the claims asserted in this Complaint occurred in this District.

21. This Court has personal jurisdiction over all of the Defendants in this action because their unconstitutional and unlawful actions occurred in the State of New Jersey.

## FACTS

### A. The School District's Violation of Plaintiffs' Constitutional Rights

22. Conroy and H.S. are two friends who both attended Lacey Township High School in Ocean County, New Jersey.

23. At all relevant times, Conroy and H.S. were twelfth graders.

24. Neither Conroy nor H.S. had ever received any discipline during their high school careers at Lacey Township High School other than warnings or minor discipline for being tardy to school on a handful of occasions.

25. On Saturday, March 10, 2018, Conroy and H.S. travelled to Galloway Township in Atlantic County to a shooting range on private property owned by Conroy's brother. There, Conroy and H.S. practiced shooting firearms that were legally purchased and properly permitted.

26. The firearms were never brought to school and were only used by Conroy and H.S. on their own personal time, off school grounds and never at school-related events.

27. According to the School District, on Monday, March 12, 2018, a parent of another student reported that H.S. had posted pictures of the guns on Snapchat, a multimedia messaging platform. The parent allegedly said that the picture made her child nervous to come to school.

28. Defendant Craig Cicardo, the Anti-Bullying Specialist, and Defendant Mark Angelo, the Assistant Principal, immediately met with H.S., who told them he was with Conroy

over the weekend at a shooting range on private property owned by Conroy's brother. He stated that on Saturday afternoon he had taken and posted images of the guns on Snapchat without any text, caption, or banner, but indicated that the postings were no longer available on Snapchat because his postings to Snapchat are automatically deleted after 24 hours and thus they would have been deleted by Sunday afternoon.

29. Though the Snapchat postings no longer existed for anyone to see, H.S. had a picture of the firearms on his own smart phone camera roll, which he showed to Cicardo, Angelo, and other school administrators. The picture depicted legal firearms lying on a table.

30. H.S. did not use the School District's technology, accounts, or internet connection to create the Snapchat post, nor was he on school grounds or at any school-related event when he made the post.

31. The image could not be reasonably construed as threatening or violent or otherwise posing any risk to the functioning of the school.

32. Despite the fact that the postings were created off-campus, outside of school hours, and without any connection to school, and the fact that the postings did not materially or substantially disrupt the work and discipline of the school and there was no specific and significant fear that disruption would occur in the future because the posts were already deleted, the School District immediately subjected H.S. to a three-day in school suspension and one Saturday detention for speech that occurred outside of school hours and off school grounds.

33. The mere fact that one student was nervous because of H.S.'s Snapchat posting did not constitute a substantial and material disruption.

34. Although no one even reported seeing any images of firearms on Conroy's social media account, Cicardo nonetheless removed Conroy from his classes and brought him to Angelo's office for questioning regarding H.S.'s Snapchat posts.

35. During that questioning, Conroy stated that he also had posted two pictures on Snapchat of the firearms that were used during the weekend target practice at his brother's house. Like H.S.'s posts, the pictures were no longer available on Snapchat because they were automatically deleted by Snapchat after 24 hours of posting.

36. Nonetheless, Conroy also still had the pictures of the firearms on his smart phone camera roll and showed them to Angelo. Conroy said they were posted with the captions, "hot stuff" and "If there's ever a zombie apocalypse, you know where to go." The pictures showed legal firearms lying on a table and could not reasonably be construed as threatening violence against any person or otherwise posing any risk. Angelo used his own iPad to capture pictures of the images on Conroy's phone.

37. Conroy did not use the School District's technology, accounts, or internet connection to create the Snapchat post, nor was he on school grounds or at any school-related event when he made the post.

38. Despite the fact that the postings were created off-campus, outside of school hours, and without any connection to school, and the fact that the School District never alleged that anyone even saw Conroy's Snapchat posts and thus his posts unequivocally did not cause any material or substantial disruption at school, the School District immediately subjected Conroy to a three-day in-school suspension and one Saturday detention for speech that occurred outside of school and off school grounds.

39. Upon information and belief, Brandis, Wigley, Cicardo, Angelo, and John Does 1-10 made the decision to suspend Conroy and H.S. for their speech.

40. Both young men served the three-day in-school suspensions in a room with poor temperature control and other disciplined students who were distracting, but the School District eventually rescinded the Saturday detentions. As a result of their suspensions, both young men

were unable to attend their classes, including Advanced Placement (AP) courses. On the final day of the in-school suspensions, Wigley stated that he was allegedly "expunging" the discipline so that there was no documentation of it in Conroy or H.S.'s student files.

41. The fact that the young men were disciplined, however, is no secret. Other students learned of the suspensions and, as a result, the news media heavily covered the story. See, e.g., J. Goldman, "*N.J. district facing backlash over gun photo suspensions changes policy.*" NJ ADVANCE MEDIA (Mar. 19, 2018); S. Duke, "*Family Visits Gun Range — Their Kids Get Suspended From School.*" NEW AMERICAN (Mar. 19, 2018); A. Ogelsby, "*Gun-rights advocates push Lacey high school to amend weapons policy.*" ASBURY PARK PRESS (Mar. 19, 2018); *"Lacey Township School District revises policy banning guns outside of school."* ASSOCIATED PRESS (Mar. 19, 2018); K. Bosco, "*Parents: Lacey Schools Went Too Far Suspending Kids Over Gun Pic.*" JERSEY SHORE ONLINE (Mar. 20, 2018); A. Ogelsby, "*Did Lacey school violate students' Second Amendment rights?*" ASBURY PARK PRESS (Mar. 21, 2018); B. Palma, "*Were Two New Jersey High School Students Suspended for Going to a Gun Range After School?*" SNOPES (April 30, 2018).

42. The School District has never publicly admitted that it should not have punished Conroy and H.S. and that it violated their free speech rights when it did so. In fact, as rumors spread on social media about Conroy and H.S. being suspended for using firearms in their private time, Wigley simply said that the rumors were incorrect, that information was contained within confidential student files, and that no one's rights were violated. He refused to provide more information to the public. These repeated public denials allowed the public to reasonably infer that Conroy and H.S. were lawfully disciplined because they engaged in some other misconduct. To this day, the School District maintains that it was justified in disciplining Conroy and H.S.

    **B.**    <u>**The School's Unconstitutionally Vague and Overbroad Policies**</u>

43. The School District's Code of Student Conduct and Regulation 5600 provides the following with regard to punishment for off-campus conduct:

> I. Student Conduct Away from School Grounds
>
> 1. The Building Principal or designee has the right to impose a consequence on a student for conduct away from school grounds that is consistent with the Board's Code of Student Conduct, pursuant to N.J.A.C. 6A:16-7.1.
>
>    a. This authority shall be exercised only when it is reasonably necessary for the student's physical or emotional safety, security, and well-being or for reasons relating to the safety, security, and well-being of other students, staff, or school grounds, pursuant to N.J.S.A. 18A:25-2 and 18A:37-2.
>
>    b. This authority shall be exercised only when the conduct that is the subject of the proposed consequence materially and substantially interferes with the requirements of appropriate discipline in the operation of the school.
>
>    c. Consequences for conduct away from school grounds shall be handled in accordance with the Board approved Code of Student Conduct, pursuant to N.J.A.C. 6A:16-7.1, Policy and Regulation 5600, and as appropriate, in accordance with N.J.A.C. 6A:16-7.2, 7.3, or 7.4.
>
> 2. School authorities shall respond to harassment, intimidation, or bullying that occurs off school grounds, pursuant to N.J.S.A. 18:A-37-14 and 15.3 and N.J.A.C. 6A:16-1.3, 7.1, and 7.2.

44. The Code of Student Conduct and Regulation 5600 is unconstitutionally vague because it is devoid of any detail that would provide Plaintiffs adequate warning that their Snapchat posts would constitute punishable conduct and the policy fails to set forth adequate standards to prevent arbitrary and discriminatory enforcement.

45. The Code of Student Conduct and Regulation 5600 is unconstitutionally overbroad because it reaches a substantial amount of constitutionally protected conduct by allowing students to be punished for protected speech that occurs away from school grounds. Indeed, that is what

10

occurred in this case when Defendants applied the policy to protected speech that occurred on private property, on the weekend, and away from school grounds.

## FIRST COUNT
### (Violation of the First Amendment of the United States Constitution, 42 U.S.C. § 1983 and § 1988 -- Punishment)

46. Plaintiffs re-allege the allegations set forth in the preceding Paragraphs as if fully set forth herein.

47. Conroy and H.S.'s purely off-campus Snapchat communications with their friends constitute speech protected by the First Amendment to the United States Constitution, as applied to the states through the Due Process Clause of the Fourteenth Amendment.

48. A school cannot punish students for exercising their free speech rights away from school grounds or school activities and on their own private time.

49. Moreover, even if schools had the authority to punish students for off-campus, purely personal speech, Conroy and H.S.'s off-campus speech did not cause any material and substantial disruption at the school.

50. Because the Snapchat posts were automatically deleted, there was no specific and significant fear of future material and substantial disruption at the school.

51. Defendants' punishment of Conroy and H.S. violated clearly established constitutional rights.

## SECOND COUNT
### (Violation of the First Amendment of the United States Constitution, 42 U.S.C. § 1983 and § 1988 – School District's Policies)

52. Plaintiffs re-allege the allegations set forth in the preceding Paragraphs as if fully set forth herein.

53. The School District's Code of Student Conduct and Regulation 5600 permits school authorities to impose discipline upon a student for conduct that occurs away from school grounds

where the conduct materially and substantially interferes with the requirements of appropriate discipline in the operation of the school.

54. Schools, however, may not punish students for off-campus speech that is otherwise protected by the First Amendment.

55. Moreover, the Code of Student Conduct and Regulation 5600 provides no detail regarding the specific behaviors that would result in punishment, providing no definition or context for students to understand what "materially or substantially interference" even means.

56. The Code of Conduct and Regulation 5600 is vague and overbroad and resulted in Conroy and H.S. being disciplined for constitutionally protected speech and/or expressive conduct that occurred off school grounds and in their own personal time.

### THIRD COUNT
**(Violation of Plaintiffs' State Right to Free Speech Guaranteed by Article I, Paragraph 6 of the New Jersey Constitution and the New Jersey Civil Rights Act and New Jersey Civil Rights Act, N.J.S.A. 10:6-2)**

57. Plaintiffs re-allege the allegations set forth in the preceding Paragraphs as if fully set forth herein.

58. Defendants' punishment of Conroy and H.S. for speech that occurred outside of school hours, off of school grounds and not at school-related activities, and which did not, and could not have, materially or substantially interrupted the school environment, amounts to retaliation for a constitutionally protected activity and a violation of Article I, Paragraph 6 of the New Jersey Constitution.

59. Defendants' punishment of Conroy and H.S. violated clearly established constitutional rights.

60. The Code of Conduct and Regulation 5600 is vague and overbroad and resulted in Conroy and H.S. being disciplined for constitutionally protected speech and/or expressive conduct

that occurred off school grounds and during their own personal time.

**WHEREFORE**, Plaintiffs request that the Court order relief against the Defendants and in favor of Plaintiffs, as follows:

A.   A declaration that Defendants' conduct as set forth above violated Conroy and H.S.'s constitutional rights to free speech under the United States and New Jersey Constitutions.

B.   An order granting Plaintiffs judgment and an award of damages in an amount to be determined at trial.

C.   An order awarding Plaintiffs their costs of suit, including reasonable attorneys' fees and expenses, pursuant to 42 U.S.C. § 1983 and § 1988 and N.J.S.A. 10:6-2 *et seq.*; and

D.   Such other and further relief the Court deems just and necessary.


Dated:  February 27, 2020        By: /s/ CJ Griffin

PASHMAN STEIN WALDER HAYDEN
A Professional Corporation
Court Plaza South
21 Main Street, Suite 200
Hackensack, New Jersey 07601
(201) 488-8200
cgriffin@pashmanstein.com

AMERICAN CIVIL LIBERTIES UNION OF
NEW JERSEY FOUNDATION
Alexander Shalom
Jeanne LoCicero
89 Market Street, 7th Floor
P.O. Box 32159
Newark, New Jersey 07102
 (973) 854-1714
ashalom@aclu-nj.org

Attorneys for Plaintiffs,
Cody Conroy and H.S., a pseudonym

CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

The undersigned hereby certifies that the matter in controversy is not the subject of any other action in any court, a pending arbitration proceeding, or a pending administrative proceeding, and that no other action or proceeding is contemplated.

I certify under penalty of perjury that the foregoing is true and accurate.

PASHMAN STEIN WALDER HAYDEN
A Professional Corporation
Attorneys for Plaintiffs,
Cody Conroy and H.S., a pseudonym

By:   /s/ CJ Griffin
      C.J. Griffin
      Court Plaza South
      21 Main Street, Suite 200
      Hackensack, New Jersey 07601
      (201) 488-8200

Dated: February 27, 2020
Hackensack, New Jersey
